**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ROLANDO ROMAN SANCHEZ,
*Defendant-Appellant.*

No. 10-10229

D.C. No.
CR 09-1125-TUC-
FRZ

OPINION

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, District Judge, Presiding

Argued and Submitted
February 16, 2011—San Francisco, California

Filed May 5, 2011

Before: Sidney R. Thomas and Mary M. Schroeder,
Circuit Judges, and Samuel Conti,* District Judge.

Opinion by Judge Conti

---

*The Honorable Samuel Conti, Senior District Judge, Northern District
of California, sitting by designation.

## COUNSEL

Scott M. McNamara, Tucson, Arizona, for the defendant-appellant.

Angela W. Woolridge, Assistant U.S. Attorney, District of Arizona, Tucson, Arizona, for the plaintiff-appellee.

## OPINION

CONTI, Senior District Judge:

## I.  *INTRODUCTION*

Defendant-Appellant Rolando Roman Sanchez appeals his conviction, following a bench trial, for possession of a firearm in violation of 18 U.S.C. § 922(g)(8), which places prohibited-possessor status on individuals subject to certain restraining orders. Sanchez was indicted and convicted for possession of a firearm while he was subject to a Tucson City Court order directing him to have no contact with his former

girlfriend and her family. Sanchez asserts that the district court committed an error of law in denying his motion for acquittal, arguing that the no-contact order cannot satisfy § 922(g)(8)'s requirement that the underlying court order "by its terms explicitly prohibit[ ] the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." Sanchez additionally argues that the district court erred in instructing the jury that the language of the court order need not track the exact language of § 922(g)(8)(C). We agree with Sanchez, and we reverse.

## II.  *FACTS*

On March 7, 2009, the Arizona Department of Public Safety ("DPS"), the Pima County Sherriff's office, and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATF") were jointly patrolling the area around a gun show occurring at Pima County Fairgrounds. DPS Detective Charles Truitt stopped a car driven by Sanchez for failure to use turn signals and stop at a traffic light. Sanchez consented to a search of the passenger compartment of his vehicle, which revealed a handgun underneath the car's center console. Truitt notified a nearby BATF agent, Rustin Wayas, who soon arrived on the scene. Sanchez consented to a search of the trunk, which revealed 250 rounds of .30 carb ammunition, three magazines holding the .30 carb ammunition, and a magazine for a Cobra CA-32 pistol. A criminal record check revealed Sanchez's January 29, 2009 conviction for Domestic Violence/Disorderly Conduct and Domestic Violence/Criminal Damage under Ariz. Rev. Stat. § 13-2904.

On June 10, 2009, a Tucson federal grand jury indicted Sanchez for one count of Possession of a Firearm and Ammunition by a Prohibited Possessor, in violation of 18 U.S.C. § 922(g)(9). Section 922(g)(9) makes it unlawful for a person "convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm. Sanchez was arraigned on July

8, 2009 and held without bond. In pre-trial proceedings, Sanchez argued that the indictment failed to state an offense under *United States v. Nobriga*, 474 F.3d 561, 564-65 (9th Cir. 2006), because the underlying domestic violence crime lacked "as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon" against a person. 18 U.S.C. § 921(a)(33)(A)(ii). Five days later, the government filed a superseding indictment, replacing the § 922(g)(9) count with a count of violation of 18 U.S.C. § 922(g)(8). Section 922(g)(8) places prohibited-possessor status on a person subject to a court order that, among other requirements, either includes a finding that the individual represents a credible threat to the physical safety of an "intimate partner or child" or "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." 18 U.S.C. § 922(g)(8).

The superseding indictment identified the judgment and terms of probation for Sanchez's January 29, 2009 domestic violence conviction as the court order satisfying § 922(g)(8)'s requirements. The judgment, a single-page form document signed by a Tucson City Court judge, directed Sanchez to "VIOLATE NO LAWS" and "HAVE NO CONTACT WITH" his former girlfriend, S.K, and her two family members, "except in court proceedings." The conditions of probation, also a single-page form document signed by the judge, placed the following restraints on Sanchez:

> A. Do not initiate or maintain telephone contact, correspondence, personal or third party contact with the victim without prior written approval of this court or probation officer. Do not enter the premises, travel or loiter near where the victim resides or works.

> B. Avoid all contact with the victim's family unless approved by probation officer.

Sanchez filed a motion to dismiss this superseding indictment, arguing that this order did not satisfy § 922(g)(8) because the statute requires the triggering court order to "by its term explicitly prohibit" the use, attempted use, or threatened use of physical force against an intimate partner. The district court denied Sanchez's motion, adopting the report and recommendation of the magistrate judge that it was "a ruling that should properly be reserved to the trier of fact."

A two-day trial commenced on February 24, 2010. At the conclusion of the government's case in chief, Sanchez moved for acquittal, renewing his argument that the no-contact order could not satisfy § 922(g)(8).[1] In response, the government argued that because the order expressly and unambiguously prohibited Sanchez from any contact with his former girlfriend, and because there were no conflicting or unclear terms in the order, it satisfied § 922(g)(8).

Ruling from the bench, the district court denied Sanchez's motion. Noting that it was a "difficult case," the court held that the jury could find that the no-contact order satisfied § 922(g)(8), because if Sanchez had any contact with the victim, he would be in violation of probation, and thus "any sort of harassing, stalking or threatening is prohibited clearly and unambiguously by the no contact order."

On February 25, 2010, the jury convicted Sanchez of possession of a firearm in violation of § 922(g)(8). He was sentenced to fifteen months of imprisonment and thirty-six months of supervised release. This appeal followed.

## III.   *DISCUSSION*

We review the district court's ruling on the motion for acquittal de novo. *United States v. Sutcliffe*, 505 F.3d 944,

---

[1]Sanchez also challenged one of the government's proposed jury instructions, an issue we need not reach in this appeal.

959 (9th Cir. 2007). Section 922(g) of Title 18 of the United States Code—part of the Gun Control Act of 1968—provides nine bases which make it unlawful for a person to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Violators are subject to imprisonment for up to ten years. *Id.* § 924(a)(2).

**[1]** Section 922(g)(8) places prohibited-possessor status on any person subject to a court order that

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)  (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>
>       (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

18 U.S.C. § 922(g)(8).

Sanchez does not dispute that, under § 922(g)(8), he knowingly possessed a firearm and that his possession was in or affected interstate commerce. Instead, he contends that he was

not subject to a court order satisfying the statute. For a court order to meet the requirements of § 922(g)(8), it must satisfy several distinct sub-elements. First, there must be a court order. 18 U.S.C. § 922(g)(8). Second, this order must have been issued after a hearing, of which the possessor received notice. *Id.* § 922(g)(8)(A) ("(8)(A)"). Third, the order must restrain the possessor from "harassing, stalking or threatening an intimate partner or child of such intimate partner or person, or engaging in conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child." *Id.* § 922(g)(8)(B) ("(8)(B)"). Fourth, the court order must also either include a finding that the possessor represents a credible threat to the victim's safety, *id.* § 922(g)(8)(C)(i) ("(8)(C)(i)"), or, by its terms, explicitly prohibit "the use, attempted use, or threatened use of physical force" against such a person, *id.* § 922(g)(8)(C)(ii) ("(8)(C)(ii)").

Sanchez argues that the language "explicitly by its terms" in (8)(C)(ii) requires the underlying court order to expressly bar the subject of the order from using, threatening to use, or attempting to use force against an intimate partner. Sanchez contends that the district court's reading goes against the plain meaning of the statute and conflicts with legislative intent.

The government argues that the evidence at trial was sufficient for a reasonable jury to find that the no-contact order satisfied (8)(C)(ii). It claims that interpreting the statute to cover no-contact orders follows from a "practical, common-sense reading" of the statute. The government also contends that if court orders such as this one are excluded from § 922(g)(8), its purposes would be frustrated.

**[2]** The interpretation of § 922(g)(8) is an issue of first impression in this circuit. The circuits that have addressed it have reached a consensus: (8)(C)(ii) is satisfied by a court order that includes explicit terms similar—if not identical—in meaning to "the use of physical force that would reasonably be expected to cause bodily injury." *United States v. DuBose,*

598 F.3d 726, 730-31 (11th Cir. 2010) (per curiam); *United States v. Coccia*, 446 F.3d 233, 242 (1st Cir. 2006); *United States v. Bostic*, 168 F.3d 718, 722 (4th Cir. 1999). The above cases all involved court orders with express and specific terms limiting the defendant's conduct: the court order in *DuBose* expressly prohibited the defendant "from intimidating, threatening, hurting, [or] harassing" his intimate partner, 598 F.3d at 730-31, while the court orders in *Coccia* and *Bostic* expressly directed the defendants to "refrain from abusing" their intimate partners, 446 F.3d at 242; 168 F.3d at 722. No court, however, has found that a court order barring "no contact"—but containing no explicit prohibitions on physical force, abuse, or harm—satisfies (8)(C)(ii).

**[3]** We hold that a conviction under 18 U.S.C. § 922(g)(8) does not require the precise language of (8)(C)(ii) to be contained in a court order. However, a court order must contain explicit terms substantially similar in meaning to the language of (8)(C)(ii). Accordingly, the district court erred in denying Sanchez's motion for acquittal, because a no-contact order that lacks explicit prohibitions on the use, attempted use, or threatened use of physical force against an intimate partner or child that would reasonably be expected to cause bodily injury cannot satisfy (8)(C)(ii).

Our reading is consistent with the plain meaning of the word "explicit." "Explicit" means "not obscure or ambiguous, having no disguised meaning or reservation." Black's Law Dictionary 579 (rev. 6th ed. 1990). Lay dictionaries offer similar definitions. *E.g.*, Merriam-Webster Collegiate Dictionary 441 (11th ed. 2003) ("fully revealed or expressed without vagueness, implication, or ambiguity; leaving no question as to meaning or intent."), Oxford American Dictionary 337 (1999) ("expressly stated, leaving nothing merely implied; stated in detail"), 5 Oxford English Dictionary 572 (2d ed. 1989) ("of knowledge, a notion, etc.; developed in detail: hence, clear, definite.").

Under any of these definitions, for a court order to "by its terms explicitly" prohibit the use, threatened use, or attempted use of physical force, it must include terms that clearly—without implication, vagueness, or ambiguity—prohibit the use, threatened use, or attempted use of physical force. While this does not require the court order to track the language of (8)(C)(ii), it must include specific terms that clearly—and without implication—prohibit such activity. A court order that merely requires "no contact" does not explicitly prohibit such activity.

This interpretation is also logical within the context of (8)(C). When interpreting statutes, "context determines meaning." *Johnson v. United States*, ___ U.S. ___, 130 S. Ct. 1265, 1270 (Mar. 2, 2010). If the words "by its terms" and "explicitly" were removed from (8)(C)(ii), the statute would be satisfied by a court order that prohibited—explicitly or otherwise—the use, attempted use, or threatened use of physical force. Because "[l]anguage employed in a penal statute is deemed to have been used intentionally," 5 Sutherland Stats. & Stat. Constr. § 59.8, it can safely be assumed that Congress did not intend "explicitly" to include "implicitly."

This reading is also apparent from a reading of (8)(C)(ii) within the context of § 922(g)(8) as a whole. Subsection (8)(B) limits the statute to court orders that restrain persons "from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child," and it does not include (8)(C)(ii)'s "by its terms explicitly" language. Context suggests that (8)(C)(i) and (8)(C)(ii) require something more than what (8)(B) requires. In addition to restraining an individual from harassing, stalking, or threatening an intimate partner or engaging in similar conduct, the court order must either: (i) include a finding that such person represents a credible threat to the physical safety of the intimate partner or child, or (ii) expressly by its terms prohibit the

use, attempted use, or threatened use of physical force against the intimate partner or child.

The government argues that our construction would frustrate the purpose of § 922(g)(8) and result in its "disparate application." This argument has little merit. A court can ensure an order triggers § 922(g)(8) by including either a finding that the person subject to the court order represented a credible threat to the physical safety of an intimate partner or child or specific terms prohibiting the use, attempted use, or threatened use of physical force.

The government further argues that it "would defy logic" to apply § 922(g)(8) to individuals who are barred by court order from acts of violence but are otherwise permitted some contact with their intimate partner, but not to individuals subject to no-contact orders, because these individuals "have presumably been found to present such a threat to victims that an absolute prohibition of any contact is necessary to protect the victims." With this argument, the government writes (8)(C)(i) out of the statute. If an individual's threat could be presumed from the terms of the order, then there would be no need for (8)(C)(i), which is satisfied only by an express finding that an individual represents a credible threat. Indeed, no-contact orders may issue where no such finding is made—an individual may voluntarily consent to a no-contact order, or have little interest in challenging one. Furthermore, a court may issue a no-contact order for reasons unrelated to the safety of the individual named in the order: for example, a court may issue terms of probation barring the probationer from having contact with a co-felon, to protect the probationer from bad influences. In such a situation, there is no presumption that the person subject to the order represents a threat of violence.

In sum, we hold that while a conviction under 18 U.S.C. § 922(g)(8) does not require that the precise language of (8)(C)(ii) be contained in a court order, a court order must contain explicit terms substantially similar in meaning to the

language of (8)(C)(ii). This result is consistent with the holdings of the First, Fourth, and Eleventh Circuits. Under this construction, the district court erred when it denied Sanchez's motion for acquittal, because even when viewing the evidence in a light most favorable to the government, the charge fails as a matter of law.

## IV.   *CONCLUSION*

**[4]** Because the district court erred as a matter of law in denying Sanchez's motion for acquittal, we REVERSE the conviction of Rolando Roman Sanchez under 18 U.S.C. § 922(g)(8) and REMAND to the district court with instructions to vacate the underlying indictment.

REVERSED and REMANDED.